UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHARLES G. DAY, JR.,

           Plaintiff,

   v.

UNITED STATES OF AMERICA,

          Defendant.

NO. CV-04-0161-EFS

**ORDER GRANTING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

On July 19, 2005, the Court held a hearing on the Government's Motion for Summary Judgment (Ct. Rec. 13) and Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 15). Michael Church and Matthew Ries appeared on behalf of Plaintiff Charles G. Day, and the Government was represented by Timothy Durkin. After hearing oral argument, reviewing the submitted materials, and considering the cited authority, the Court is fully informed and hereby grants the Government's Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment.

///
///
///
///
///

ORDER ~ 1

# I. Background[1]

## A. The Incident

On February 12, 2003, Plaintiff and his wife were shopping at the commissary located on the Fairchild Air Force Base ("FAFB"). (Ct. Rec. 23-2 at 9.)  After paying for their purchases, Plaintiff and his wife began walking towards the FAFB commissary's (the "Commissary's") exit. *Id.* However, before they were able to leave, Joseph A. Morris, a Commissary bagger, began tugging on one of Plaintiff's grocery bags. *Id.* In response, Plaintiff asked Mr. Morris to explain what he was doing. *Id.* This question was met with a response from Mr. Morris that he was "just fooling around." *Id.*  In response, Plaintiff informed Mr. Morris' that he did not think Mr. Morris' conduct was funny and that "fooling around" can cause people to get hurt. *Id.*  Mr. Morris then allegedly stated that he did not believe Plaintiff would hurt him. *Id.*  After hearing this comment, Plaintiff purportedly informed Mr. Morris he could get him "fired for a trick like this." *Id.*

Plaintiff then began walking in the direction of the Commissary's business office with Mr. Morris following. *Id.*  As Plaintiff drew closer to the office, Mr. Morris allegedly advised Plaintiff to keep moving,

---

[1] In ruling on a motion for summary judgment, the Court considers the facts and all reasonable inferences therefrom, as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The following factual recitation was created utilizing this standard.

ORDER ~ 2

implying Plaintiff should not speak with the Store Director, Eric Quantock. *Id.*  Plaintiff refused and persisted in his attempt to speak with the Store Director. *Id.* At that point, there was physical contact between Plaintiff and Mr. Morris, which resulted in Mr. Morris falling into a seated position on a bench at the front of the store. *Id.* at 10.

After rising from the bench, Mr. Morris punched Plaintiff in the left eye.[2] *Id.*  This punch was followed by an additional punch by Mr. Morris, which also struck Plaintiff in the face. *Id.*  Sometime in the midst of the melee, other baggers involved themselves in the altercation and eventually separated Mr. Morris from Plaintiff. *Id.* However, by that time, Plaintiff had already suffered several serious physical injuries to his face. *Id.*

**B. Mr. Morris' Prior Misconduct**

Mr. Morris, who was twenty years old when he injured Plaintiff, had worked as a bagger[3] at the Commissary for approximately twenty months. (Ct. Rec. 23-2 at 16.)  During that time, Mr. Morris was disciplined twice for work-related conduct. *Id.* at 24.  On the first occasion, Mr. Morris was sent home for the remainder of the work day after he

---

[2] The Government claims Mr. Morris was pushed on to the bench a second time by Plaintiff prior to throwing any punches. (Ct. Rec. 23-2 at 13.)  This factual dispute is immaterial to the consideration of the instant motions.

[3] FAFB baggers are persons licensed by the Commissary to bag and carry Commissary customer's groceries out of the store to their vehicles. (Ct. Recs. 23-2 at 17 & 22-5 at 4.)

ORDER ~ 3

inappropriately solicited a bagging opportunity from a customer going through the Commissary's check-out. *Id.* This incident did not involve any violence, verbal confrontation, or unruly behavior on the part of Mr. Morris. *Id.*

On the second occasion, Mr. Morris was reprimanded for arguing with an off-duty bagger, Joanie Cook, who was proceeding through the Commissary's check-out with her mother after shopping for groceries. *Id.* 24-25. Mr. Morris pushed a cart into the bagger area at the end of the check-out area Joanie Cook and her mother were using. *Id.* For unknown reasons, Joanie Cook was unhappy that the cart had been pushed toward her and began arguing with Mr. Morris. *Id.* As was the case during the first occasion, there is no evidence of violent conduct nor physical contact with anyone by Mr. Morris during this encounter. *Id.* However, Joanie Cook's father, Mr. Joseph Cook, subsequently complained to the Store Director that he believed Mr. Morris was a "sneaky intimidator" and that he believed the Commissary "was going to have problems with [Mr. Morris] because of the way he liked to intimidate people."[4] (Ct. Rec. 16.)

## II. Standard of Review

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess

---

[4] In this complaint, Mr. Cook did not express a belief Mr. Morris was violent, had a history of violence, or had a propensity for violence.

ORDER ~ 4

credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id.* at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.*   There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

///

///

ORDER ~ 5

**III. Analysis**

**A. The FTCA and its Assault & Battery Exception**

The United States of America, as sovereign, is generally immune to private suits for money damages. *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941). One broad waiver of this immunity is found in the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 1346(b)(1). Under the FTCA, United States district courts are authorized to hear

> claims against the United States, for money damages . . . for personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* If found liable under the FTCA, the Government is obligated to pay monetary damages "in the same manner and to the same extent as a private individual under like circumstances . . . ." *Id.* § 2674.

One notable exception to the FTCA waiver of sovereign immunity relates to intentional torts. *See id.* § 2680(h). Under what is sometimes termed the "assault and battery exception" to the FTCA, the federal government remains immune to suits arising from claims of assault and battery caused by federal employees. *Id.*; *Senger v. United States*, 103 F.3d 1437, 1439 (1996). As a consequence of the assault and battery exception and due to the intentional nature of Mr. Morris' conduct, the Government is immune from vicariously liable for Mr. Morris' alleged battery of Plaintiff. *Id.*

In recognition of the assault and battery exception, Plaintiff has not alleged the Government is vicariously liable for Mr. Morris' conduct, but instead, has focused his claims on what he believes were negligent

acts or omissions committed by the Government, which he argues were the proximate cause of Mr. Morris' battery and Plaintiff's resulting injuries. Plaintiff's negligence-based claims have been recognized by the Ninth Circuit as not being barred by the assault and battery exception. *Senger*, 103 F.3d at 1441. Thus, Plaintiff's negligence claims against the Government, which include the following, are permitted under the FTCA: (1) negligent failure to protect Plaintiff from Mr. Morris' reasonably foreseeable tortious conduct ("failure to protect claim"); (2) breach of the duty to ensure reasonable care was used by its baggers in carrying out their duties ("failure to control conduct claim"); (3) negligent failure to safely maintain its premises ("failure to maintain safe premises claim"); (4) negligent failure to supervise Mr. Morris ("negligent supervision claim"); and (5) negligent hire and retention of Mr. Morris ("negligent hiring claim"). (Ct. Rec. 1 at 3-4.)

**B. Duty & Foreseeability**

"In any action for negligence[,] a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wash. 2d 43, 48 (1996). Thus, a threshold issue in all negligence actions is the determination of whether the plaintiff was owed a duty by the defendant. *Taylor v. Stevens County*, 111 Wash. 2d 159, 164 (1988). "Common law principles of negligence provide that duty is a question addressed to the court." *Bernethy v. Walt Failor's, Inc.*, 97 Wash. 2d 929, 934 (1982). However, once the initial determination of duty has been made by the Court, the trier of fact is tasked with the responsibility of determining the scope of liability associated with that

duty. *Id.*  In carrying out this responsibility, the trier of fact must determine whether the harm sustained by the plaintiff was foreseeable. *Lee v. Christian*, 113 Wash. 2d 479, 492 (1989) ("The concept of foreseeability limits the scope of the duty owed.").  "[I]n order to establish foreseeability[,] 'the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant.'" *Id.* (quoting *Maltman v. Sauer*, 84 Wash. 2d 975, 981 (1975)); *Rikstad v. Homberg*, 76 Wash. 2d 265, 269 (1969).  Finally, although the task of determining whether an injury was foreseeable is normally left to the trier of fact, it is "decided as a matter of law where reasonable minds cannot differ." *Id.* (citation omitted).

## 1. **The Duty Owed to Plaintiff as a Business Invitee**

Individuals typically have no duty to prevent third persons from harming others. *Taggart v. Sandau*, 118 Wash. 2d 195, 218 (1992). However, an exception to this general rule arises when

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 315 (1965)); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wash. 2d 217 (1991).  The relationship between a business and an invitee constitutes a special relationship under the above-described exception. *Nivens v. 7-11 Hoagy's Corner*, 133 Wash. 2d 192, 201 (1997).  Therefore, because Plaintiff was an invitee of the Commissary, a federal government business, the Government had a *general*

ORDER ~ 8

1  duty to prevent third parties, such as Mr. Morris, from harming
2  Plaintiff. *Id.*

3  **2. The Foreseeability of Plaintiff's Injuries**

4        As indicated in the Court's legal recitation above, the Government's
5  general duty to prevent third party injuries to Plaintiff as a business-
6  invitee was not absolute. *See Lee*, 113 Wash. 2d at 492.   Instead, the
7  Government's duty to prevent third party injuries was limited by the
8  concept of foreseeability. *Id.*   Specifically, the Government's duty to
9  prevent third party injuries to Plaintiff extended only to those injuries
10  "reasonably perceived as being within the general field of danger covered
11  by" the business-invitee duty. *Id.*   Thus, the Government had no duty to
12  prevent the injuries allegedly caused by Mr. Morris, if they were
13  unforeseeable, i.e. fell outside the "general field of danger" associated
14  with the Government's general business-invitee duty.

15        A court may determine a criminal act, such as assault, and its
16  consequences are "unforeseeable as a matter of law [ ] if the occurrence
17  is so highly extraordinary or improbable as to be wholly beyond the range
18  of expectability." *Johnson v. State*, 77 Wash. App. 934, 942 (1995).
19  Under this standard, a third party criminal act that injures a customer,
20  was likely foreseeable to a business owner if the business owner's past
21  experience with the third party led, or should have led, the business
22  owner to deduce future misconduct by the third party would likely
23  endanger the safety of its customers. *Id.* at 204-05; *Wilpert v. Metro.*
24  *Park Dist. of Tacoma*, 90 Wash. App. 304, 309 (1998); *Nivens*, 133 Wash.
25  2d at 192; *Christen v. Lee*, 113 Wash. 2d 479, 496 (1989); *Shelby v. Keck*,
26  85 Wash. 2d 911 (1975); *Jones v. Leon*, 3 Wash. App. 916, 926 (1970).

In the instant motions, both parties argue they are entitled to summary judgment on the issue of whether Mr. Morris' assaultive conduct was foreseeable to the Government.  The Government focuses on the absence any evidence of prior violent behavior by Mr. Morris, while Plaintiff emphasizes Mr. Morris' two Commissary reprimands and the comments made by Mr. Cook to the Store Manager, which Plaintiff believes created a general field of danger from which his injuries should have been anticipated.

After considering the parties' arguments and the facts as they have been presented, the Court concurs with the Government and finds as a matter of law that the injuries caused to Plaintiff by Mr. Morris' alleged assault were so unexpected they could not have been reasonably foreseen by the Government.  The Court's ruling is based on the fact that no evidence has been offered to establish (1) Mr. Morris had a history of violent or threatening behavior or (2) that neither Mr. Morris, any other bagger, nor any Commissary employee had ever had a physical or threatening altercation with any prior customer.

The Court is unpersuaded by Plaintiff's claim that Mr. Morris' two reprimands, Mr. Cook's comments to the Store Director, and Mr. Morris' inclination to joke with customers put the Government on notice that Mr. Morris presented a risk of physical danger to customers.  Mr. Morris' first reprimand was based on a wrongful attempt to solicit work from a customer going though the Commissary's check-out area. (Ct. Rec. 23-2 at 24.)  In sworn declarations, the Store Director and Head Bagger have each stated this incident did not involve violence, verbal confrontation, or any type of unruly conduct.  (Ct. Rec. 23-2 at 24-25, 35-36.)  Mr.

Morris' second reprimand was based on a short argument he had with off-duty bagger while she and her mother were proceeding though the Commissary's check-out stand.  As was the case with Mr. Morris' first reprimand, the Store Director and Head Bagger each swear this incident involved no violence and was limited to a short oral argument between the two baggers. (Ct. Rec. 23-2 at 24-25, 35-36.)

In addition to his statement regarding Mr. Morris' two prior reprimands, the Store Director, who has held the position since 1997, declared that he is "unaware of any fight, assault, acts of violence and/or physical altercation of any nature having been committed by any bagger or employee of [the] Commissary." (Ct. Rec. 23-2 at 26.) Similarly, the Head Bagger declared she was "unaware of any other behavior problems with Mr. Morris" and that she found "Mr. Morris to be a generally polite, happy, and well-behaved young man" who the Head Bagger had never known "to engage in acts of violence or to threaten violence against patrons or baggers." (Ct. Rec. 23-2 at 37.)

Aside from pointing to the circumstances of Mr. Morris' two reprimands, the only other evidence Plaintiff has presented to demonstrate the injuries stemming from Mr. Morris' alleged assault were foreseeable, are comments contained in an affidavit provided by Mr. Cook, the father of the off-duty bagger involved in Mr. Morris' second reprimand.  In his affidavit, Mr. Cook states that after the incident involving his daughter, he told the Store Director he believed Mr. Morris is a "sneaky intimidator" and that the Commissary was "going to have problems with [Mr. Morris] because he liked to intimidate people." (Ct. Rec. 16-5 at 37.)  These statements are too broad to constitute a

ORDER ~ 11

1  legitimate warning to the Government that it was reasonably foreseeable

2  that Mr. Morris would assault a future Commissary customer.

3       Mr. Cook's statements did not indicate Mr. Morris had ever been

4  violent, threatened violence, or demonstrated a propensity towards

5  violence.  Instead, Mr. Cook simply warned the Store Director that Mr.

6  Morris would cause "problems" for the Commissary, not indicating what

7  type of problems his warning included.  Furthermore, Plaintiff has laid

8  no foundation for Mr. Cook's warning or explained what personal knowledge

9  Mr. Cook had for making the warning.

10      Neither the facts contained in the record nor the reasonable

11  inferences therefrom create a genuine issue of material fact that the

12  Government was aware or reasonably should have been aware Mr. Morris or

13  any other bagger or Commissary employee posed a risk of assaulting

14  Commissary customers like Plaintiff.  Therefore, the Court concludes

15  reasonable minds would agree Mr. Morris' alleged assault of Plaintiff was

16  outside the "general field of danger" from which a business, here the

17  Government as operator of the Commissary, had a duty to protect its

18  customers as invitees.  In short, the alleged assault of Plaintiff by Mr.

19  Morris was unforeseeable and therefore, the Government did not breach any

20  duty owing to him in the five presented negligence claims.  Accordingly,

21  Plaintiff's claims must be dismissed.  Summary judgment is granted to the

22  Government and denied to the Plaintiff for the same reasons.

23      Accordingly, **IT IS HEREBY ORDERED:**

24      1. The Government's Motion for Summary Judgment **(Ct. Rec. 13)** is

25  **GRANTED.**  Summary judgment in awarded in favor of the Government on all

26  claims alleged by Plaintiff.

ORDER ~ 12

1        2. Plaintiff's Motion for Partial Summary Judgment **(Ct. Rec. 15)** is

2   **DENIED.**

3        **IT IS SO ORDERED.**   The District Court Executive is directed to:

4        (A) Enter this Order;

5        (B) Enter judgment in favor of the Government on all claims alleged

6   by Plaintiff in this action;

7        (C)  Strike  the  currently  scheduled  August  1,  2006,  pretrial

8   conference and August 21, 2006, trial.

9        (D) Provide copies of this Order and the Judgment to counsel; and

10       (E) Close this file.

11       **IT IS SO ORDERED.**   The District Court Executive is directed to enter

12  this Order and provide a copy to counsel.

13       **DATED** this  __30th___  day of March, 2006.

14

15                      ___s/ Edward F. Shea___
                            EDWARD F. SHEA
16              United States District Judge

17

Q:\Civil\2004\0161.cross.msj.frm

18

19

20

21

22

23

24

25

26

ORDER ~ 13